## IN THE COURT OF APPEALS OF IOWA

No. 17-1004
Filed September 13, 2017

**IN THE INTEREST OF Z.R.,**
**Minor Child,**

**C.R., Mother,**
  Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

The mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2017). **AFFIRMED.**

J. Joseph Narmi, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Roberta J. Megel of State Public Defender Office, Council Bluffs, guardian ad litem for minor child.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

The juvenile court terminated Chelsea's parental rights in her child, Z.R., pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2017). In this appeal, Chelsea challenges the sufficiency of the evidence supporting the statutory grounds authorizing termination of her parental rights, argues the State failed to make reasonable efforts towards reunification, challenges the denial of her request to defer permanency for six months, challenges the determination that termination of her parental rights was in the best interest of her child, and contends permissive considerations should preclude the termination of her parental rights.

I.

Chelsea is the biological mother of three children, J.M. (born 2005), L.S. (born 2009), and Z.R. (born 2015), and she is pregnant with a fourth child. She is married to Z.R.'s father, Justin.

This family has a history of involvement with the Iowa Department of Human Services (IDHS). In 2014, prior to Z.R.'s birth, an assistance proceeding was opened when IDHS became aware Chelsea was using methamphetamine. J.M. and L.S. were removed from her care for a period of time. Ultimately, the case was closed, and J.M. and L.S. were returned to Chelsea's care.

The instant case was initiated in October 2016. Chelsea was on probation after being convicted of child endangerment in 2014. Chelsea's probation officer reported Chelsea had not been complying with drug testing. Chelsea's probation officer also confirmed the one test Chelsea had provided showed a positive result for methamphetamine. Based on this information, all three children were

removed from Chelsea's care. The juvenile court placed J.M. and L.S. with their respective biological fathers.[1] Upon removal, Z.R. tested positive for amphetamine, methamphetamine, opiates, and THC. The juvenile court placed Z.R. in foster care under the custody of IDHS. Chelsea was ordered to complete a substance-abuse evaluation, mental-health evaluation, sign a medical records release, and complete random drug screens.

Chelsea made little progress in the months following removal. The children were adjudicated in need of assistance in December 2016. At that time, Chelsea had not yet completed a substance-abuse or mental-health evaluation. She denied she needed substance-abuse treatment. She had not complied with many of IDHS's drug-test requests. The tests she did complete showed positive results for THC, methamphetamine, and opiates. At the time of the dispositional order in January 2017, Chelsea had completed her substance-abuse evaluation, but she refused to comply with substance-abuse treatment recommendations. She continued to deny substance use despite testing positive for controlled substances and despite Chelsea's probation officer providing information showing Chelsea had received six different opiate prescriptions from three doctors the prior September.

February and March were no better than December and January. Chelsea had not yet obtained a mental-health evaluation. She had not completed substance-abuse treatment. She continued to deny substance use, claiming her positive test results were false positives or were the result of

---

[1] Both biological fathers were later given sole legal custody and physical care of their respective children.

involuntary or unknowing ingestion of controlled substances. For example, she contended unbeknownst to her someone put methamphetamine in a glass from which she was drinking. She was incarcerated for two separate probation violations. The first period of incarceration lasted a week. On the second occasion, Chelsea was arrested on March 9 and remained incarcerated until the second week of April. At that time, Chelsea was transitioned to a residential correctional facility. Her visitation with Z.R. was sporadic at best, and IDHS reduced visitation to once per week until Chelsea could demonstrate consistency. Pursuant to the request of Chelsea and Z.R.'s father, Z.R. was placed with a maternal aunt in Georgia. The maternal aunt had indicated a willingness to adopt Z.R. should reunification efforts fail.

In April 2017, the State filed its petition to terminate Chelsea's parental rights. At around this same time, Chelsea began to show some progress. She obtained employment. She provided some clean drug tests. Nonetheless, the juvenile court terminated Chelsea's rights pursuant to Iowa Code section 232.116(1)(e), (h) and (*l*). In support of the order terminating parental rights, the juvenile court found Chelsea was unable to resume care of the child. Chelsea was in a residential correctional facility at the time of the termination hearing. She still denied methamphetamine use and the need for treatment.

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). Termination of parental rights follows a familiar three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must find that the State has proved a statutory ground for

termination pursuant to Iowa Code section 232.116(1). *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Second, pursuant to section 232.116(2), the State must prove termination is in the best interest of the child. *See id.* at 219–20. Finally, the court must consider whether any considerations set forth in section 232.116(3) should preclude termination. *See id.* at 220.

## A.

We first address the sufficiency of the evidence supporting the statutory grounds authorizing the termination of Chelsea's parental rights. The State has the burden to prove its case by clear and convincing evidence. *See* Iowa Code § 232.96. "Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). "It is the highest evidentiary burden in civil cases." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016). "It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Pursuant to Iowa Code section 232.116(1)(h), the juvenile court may terminate parental rights when the State has proved the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

   (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). Only the fourth element is in dispute here.

Under the fourth element, a child cannot be returned to the custody of the child's parent if the child would remain a child in need of assistance or would be exposed to harm amounting to a new child-in-need-of-assistance adjudication. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "We have interpreted this to require clear and convincing evidence the child[] would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

There is clear and convincing evidence Z.R. could not be returned to Chelsea's care without an appreciable risk of harm. Chelsea has a long history of untreated substance abuse. Her substance abuse actively interfered with her ability to provide adequate care for the child. The child tested positive for methamphetamine, amphetamine, morphine, oxymorphone, oxycodone, and THC. In similar circumstances, we have found severe, untreated substance abuse to create a sufficient risk of harm to the child to warrant termination of a parent's rights. *See, e.g., In re A.B.*, 815 N.W.2d at 776 (noting drug addiction can render a parent unable to care for children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of

parental rights when parent had history of substance abuse). We reach the same conclusion in this case.

B.

Chelsea challenges the efforts made to facilitate reunification with Z.R. As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(9) (providing department of human services must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The core of the mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

Here, Chelsea generally challenges whether IDHS made reasonable efforts to facilitate reunification with Z.R., noting the case proceeded to termination expeditiously. Generalized complaints regarding the services offered are inadequate to preserve a challenge to the sufficiency of the services provided. "We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made." *In re*

*C.B.*, 611 N.W.2d at 493–494. "If . . . a parent is not satisfied with [I]DHS' response to a request for other services, the parent must come to the court and present this challenge." *In re C.H.*, 652 N.W.2d at 147; *see* Iowa Code § 232.99(3) ("The court shall advise the parties that failure to identify a deficiency in services or to request additional services may preclude the party from challenging the sufficiency of the services in a termination of parent-child relationship proceeding.").

Here, Chelsea was offered substance-abuse evaluation and treatment, mental-health evaluation, visitation services, transportation service, drug testing, and family, safety, risk and permanency services. IDHS offered placement services, placing Z.R. in Georgia with a maternal aunt at Chelsea's request. For most of this case, Chelsea chose to deny her need for services and chose not to use the services offered. "This is not a case in which the State failed to make reasonable efforts; it is a case in which the mother failed to use the services offered." *In re A.E.*, No. 16-0510, 2016 WL 3271887, at *2 (Iowa Ct. App. June 15, 2016). In addition, the record reflects Chelsea never requested any additional or different services. Her challenge to the State's efforts thus fails. *See In re C.H.*, 652 N.W.2d at 148 (stating a parent must make such a challenge "at the removal, when the case permanency plan is entered, or at later review hearings" and voicing complaints to a social worker is not sufficient to preserve error); *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting that while the State has an obligation to make reasonable efforts to preserve the family, it is a parent's responsibility to demand other, different, or additional services in order to preserve error).

C.

The juvenile court declined Chelsea's request to continue the termination hearing and defer permanency for six months. It is unclear whether Chelsea raises the decision denying her request to continue the hearing and the request to defer permanency as separate issues. To the extent Chelsea contends the denial of her request to continue the hearing, standing alone, was an abuse of discretion, we conclude there was no abuse of discretion. We address her request for an additional six months' time below.

Pursuant to Iowa Code section 232.104(2)(b) the court may enter an order deferring permanency for six months upon a finding the need for the child's removal will no longer exist at the end of the additional six-month period. The court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination" the need for removal will no longer exist at the end the extension. Iowa Code § 232.104(2)(b). "The court may look at a parent's past performance" in determining if such a deferral is appropriate. *In re T.D.H.*, 344 N.W.2d 268, 269 (Iowa Ct. App. 1983). "The judge considering [deferred permanency] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the child[] in a better home." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

There is no basis in the record to conclude removal would no longer be necessary at the end of an additional six-month period. Chelsea has a long history of substance abuse, including use of opiates and methamphetamine. She continued to deny her substance abuse despite positive test results to the

contrary. She made little effort to comply with court orders and IDHS requests for drug testing, substance-abuse treatment, and a mental-health evaluation until she was transitioned into a custodial setting. "[W]e must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). Chelsea's treatment history offers little hope of future success.

Chelsea contends more recent history demonstrates she is amenable to services and could be in a position to regain custody of the child if given more time. Specifically, she notes her improvement after being moved into the residential treatment facility. While her improvement is commendable, this "fourth-quarter rally" falls short. *In re A.E.*, 2016 WL 3271887, at *3 ("After sleepwalking through the first three quarters of this case, Maranda's furious fourth-quarter rally falls short."); *In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where "mother's late progress in the case did not begin until after the State filed its petition seeking termination of parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights."); *In re I.V.*, No. 15-0608, 2015 WL 4486237, at *2–3 (Iowa Ct. App. July 22, 2015) (holding "last-minute" use of services for litigation purposes was insufficient to demonstrate the child could be returned to the mother's care). It is well-established that "[a] parent cannot wait until the eve

of termination . . . to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d at 495.

In addition, Chelsea's improvement has occurred in a custodial setting. *See In re L.C.*, No. 17-0922, 2017 WL 3283397, at *4–5 (Iowa Ct. App. Aug. 2, 2017) (noting the court considers whether sobriety has occurred outside a custodial setting in making termination decisions). Where, as here, "the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." *In re N.F.*, 579 N.W.2d at 341.

We affirm the district court's decision to decline Chelsea's request to afford her more time. "Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable." *In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990).

D.

Chelsea challenges the juvenile court's determination that termination of her parental rights is in the child's best interest. She cites her strong bond with Z.R., his relationships with his half-siblings, and a letter from the maternal aunt stating she and her husband support more time for Chelsea to reunify with Z.R.

There is clear and convincing evidence establishing the termination of Chelsea's parental rights is in the child's best interest. Chelsea has demonstrated an inability to minister effectively to the social, educational, and physical needs of the child. Indeed, her physical care of the child exposed the child to harm. The family was living in a home in which methamphetamine was

being manufactured. While in Chelsea's care, Z.R. tested positive for amphetamine, methamphetamine, opiates, and THC. Chelsea's probation officer testified Chelsea's methamphetamine use posed an active danger to the child. There is no countervailing evidence showing the maintenance of the parent-child relationship is in the child's best interest.

E.

Chelsea argues other considerations warrant preserving the parent-child relationship. Specifically, she argues termination is unnecessary because Z.R. is in the care of a family member, his maternal aunt. *See* Iowa Code § 232.116(3)(a). She also argues her bond with Z.R. makes termination detrimental to him pursuant to section 232.116(3)(c). "The factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011).

On these facts, we find no justification for preserving the parent-child relationship. First, Z.R. is placed in the physical care of his maternal aunt but is not in the custody of his aunt. Section 232.116(3)(a) is thus inapplicable here. *See In re A.M.*, 843 N.W.2d at 113. Second, the maternal aunt has requested the child be placed elsewhere if Chelsea's rights are terminated. In other words, the maternal aunt no longer wishes to be considered as a placement for adoption. Third, Z.R. is very young and has been out of Chelsea's care for nearly half of his life. During the time Z.R. has been removed from Chelsea's care, she exercised visitation only sporadically. Z.R. and Chelsea have not developed a meaningful bond. Any detriment to the child due to the termination

of Chelsea's parental rights pales in comparison to the benefits of being placed in a stable and safe environment.

## III.

For the foregoing reasons, we affirm the termination of Chelsea's parental rights in Z.R.

**AFFIRMED.**